IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMISI JERMAINE CALLOWAY,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>DR. WANG, et al.,<br><br>　　　　　Defendants.<br>_____ | 1:08-cv-01896 LJO  GSA PC<br><br>FINDINGS AND RECOMMENDATIONS RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 56, 57)<br><br>OBJECTIONS DUE IN THIRTY DAYS |

　　　Plaintiff is a state prisoner proceeding pro se in this civil rights action.  This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).  Pending before the Court is Defendants' motion for summary judgment.  Plaintiff has opposed the motion.[1]  Plaintiff has also filed a motion for summary judgment.

**I.　　Procedural History**

　　　This action proceeds on the October 5, 2009, third amended complaint.  In an order entered on March 17, 2011, the Court found that the third amended complaint stated a claim for relief against Defendant Dr. Wang for deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment.  Plaintiff also stated a claim for relief against Defendant Correctional Officers Oaks and Hayward for excessive force in violation of the Eighth Amendment.

　　　Plaintiff is currently incarcerated at Kern Valley State Prison.  The events at issue in this

---

[1] On April 7, 2011, the Court issued and sent to Plaintiff the summary judgment notice required by Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).  (ECF No. 26.)  Defendants' motion was filed on April 23, 2012.  On July 10, 2012, Plaintiff was re-served with the Rand notice in response to the Ninth Circuit's decision in Woods v. Carey, 684 F.3d 934 (9th Cir. 2012).

lawsuit occurred while Plaintiff was housed at Corcoran State Prison.  In the third amended complaint, Plaintiff alleges that  On May 2, 2008, after Plaintiff reported that he was suffering from severe chest pain, he was escorted by wheelchair to the emergency room for emergency medical care.  As Plaintiff stood up from the wheelchair to be weighed by a nurse, C/O Oaks held the chair and C/O Hayward grabbed Plaintiff's right bicep and began deliberately hurting him.  Plaintiff recently had an intravenous tube in his bicep during a surgery at Mercy Hospital.  Both Hayward and Oaks were aware of Plaintiff's disability.  Plaintiff told Hayward to stop hurting him and pulled off Hayward's tight grip which was cutting off Plaintiff's circulation.  Hayward jumped away in self-defense and began striking Plaintiff in the head and face.  Oaks struck Plaintiff on his back and head.  The emergency alarm was activated and Hayward started screaming to the arriving officers that it was a staff assault.  Plaintiff alleges that he never tried to assault staff, and that he was being assaulted himself.  Plaintiff went in and out of consciousness and could not defend himself.  Sometime during the assault, Plaintiff's handcuffs were taken off one hand, and his other hand was stomped.  Both arms were twisted behind his back and both shoulders were dislocated.  Plaintiff was thrown onto a gurney and his hands were chained to the gurney.

Plaintiff's wounds were cleaned  and his left hand was wrapped.  Dr. Wang ordered Plaintiff to be taken back to his housing unit, to be followed up with an x-ray to determine if his hand was broken.  For almost a week, Plaintiff had no medical treatment because Dr. Wang failed to follow up while he helped the administration cover up the assault, deliberately delaying the x-rays and medical treatment.  Plaintiff's hand was found to be fractured and he was referred to the emergency room to be sent out for a cast.  Instead, Plaintiff was sent back to his housing unit "for weeks."  Plaintiff alleges that his hand became deformed from not being set in place.  By the time he saw the bone specialist, it was too late because the hand had already started healing.

///

## II. Summary Judgment Standards

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [a]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

With regard to a plaintiff's motion for summary judgment, as the party with the burden of persuasion at trial, Plaintiff must establish "beyond controversy every essential element of its" his affirmative claims. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003) (quoting W. Schwarzer, California Practice Guide: Federal Civil Procedure Before Trial § 14:124-127 (2001)). The moving party's evidence is judged by the same standard of proof applicable at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson, 477 U.S. at 248; Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1996), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, Matsushita, 475 U.S. at 588; County of Tuolumne v. Sonora Community Hosp., 263 F.3d 1148, 1154 (9th Cir. 2001).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865, 872 (9th Cir. 2007). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**III.    Plaintiff's Motion**

Plaintiff's motion consists of a four page document that essentially sets forth the language and requirements of Federal Rule of Civil Procedure 56. In support of his motion, Plaintiff submits a document titled as a declaration and a document titled as a memorandum in support.

Plaintiff also submits a separate statement of undisputed facts. In his statement of undisputed facts, Plaintiff refers to his declaration and the exhibits attached in support of his declaration.

In his memorandum, Plaintiff essentially recites the language of Federal Rule of Civil Procedure 56. Plaintiff does not refer the Court to any specific evidence, or make any argument based upon his statement of undisputed facts. In his statement of undisputed facts, Plaintiff largely refers to his treatment for his renal condition. Regarding the issue in this lawsuit, the treatment for his hand, Plaintiff offers as an undisputed fact that he "never received therapy for his broken hand or a cast to set his hand." As support, Plaintiff cites to "medical records, attached as Exhibit (A) to Calloway Decl." The Court has reviewed the attached medical records, and finds no support for Plaintiff's assertion that he was not treated. Although Exhibit A does support Plaintiff's contention that he did not receive a cast, it also indicates that a cast was not warranted. The Court will analyze Plaintiff's Exhibit A in more detail below, when addressing the opposition to Defendants' motion.

As noted above, Plaintiff has the burden of Plaintiff must establishing every essential element of his claims. S. Cal. Gas Co., 336 F.3d at 888 (quoting W. Schwarzer, California Practice Guide: Federal Civil Procedure Before Trial § 14:124-127 (2001)). Plaintiff is not entitled to judgment as a matter of law simply by referring to the language of Rule 56 and offering undisputed facts unsupported by reference to specific evidence. Plaintiff may not assert that he did not receive treatment by simply referring to his medical record. The Court finds that Plaintiff has not met his burden on summary judgment.

### IV. Defendants' Motion

In their motion for summary judgment, Defendants argue that Dr. Wang did not violate Plaintiff's Eighth Amendment rights.[2] In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, a plaintiff must allege "acts or omissions

---

[2] Defendants do not refer to the conduct of Defendants Oaks or Hayward, and make no argument regarding Plaintiff's allegations of excessive force. Plaintiff's claims of excessive force will therefore survive the motion for summary judgment.

5

sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind.  Wilson v. Seiter, 111 S.Ct. 2321, 2323 (1991).

The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 112 S.Ct. 995, 998 (1992); Wilson, 111 S.Ct. at 2323.  Deliberate indifference is present "when prison officials deny, delay or intentionally interfere with medical treatment," or it may be shown "by the way . . . prison physicians provide medical care." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (cites omitted).  While neither negligence nor medical malpractice is sufficient to violate the Eighth Amendment, a plaintiff is not required to show a complete failure to provide medical treatment.  Rather, "deliberate indifference" may be shown by conduct amounting to a total failure to competently treat a serious medical condition, even if some treatment is prescribed.  See, Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989).

Additionally, plaintiff cannot prevail in a section 1983 action where only the quality of treatment is subject to dispute.  Sanchez v. Vild, 891 F.2d 240 (9th Cir. 1989).  Mere difference of opinion between a prisoner and prison medical staff as to appropriate medical care does not give rise to a section 1983 claim. Hatton v. Arpaio, 217 F.3d 845 (9th Cir. 2000); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

In order to meet his burden on summary judgment, Dr. Wang must come forward with evidence that establishes the lack of existence of a triable issue of fact - evidence that he was not deliberately indifferent to a serious medical need of Plaintiff's.  Dr. Wang supports his motion with his own declaration, along with Exhibit A, copies of relevant portions of Plaintiff's medical record.

Regarding the events at issue, Dr. Wang declares that:

> On May 7, 2008, inmate Calloway was transported via wheelchair to the medical clinic upon his complaints of chest pain and light-

6

headedness.

Following his arrival at the medical clinic, Calloway was involved in a physical altercation with correctional staff.  I did not observe the incident between Calloway and the correctional staff.

Following the incident, Calloway ambulated to Emergency Room #1 in the medical clinic.  Calloway was agitated and refused to have his vital signs taken and initial assessment by nursing staff.  Registered Nurse Ceballos prepared a Medical Report of Injury of Unusual Occurrence following the incident.  On this report, she noted that she observed that Calloway had abrasions/scratches on his knees and left eye and that there was a bruise/discolored area on his left eye.

After Calloway was placed on a gurney in Emergency Room #1, his knees were cleaned and bandaged.  I examined Calloway's injuries and discussed his earlier complaints of chest pain and light-headedness with him.  I arranged to transfer Calloway to the Acute Care Hospital (ACH) at Corcoran for evaluation of his chest pain complaints.  Calloway was agitated but in no distress.  Calloway refused to be transferred and stated that he was feeling better.

In examining his left hand, I noted swelling and tenderness between the 4th and 5th metacarpal bones.  I prepared Physician's Orders to wrap Calloway's left hand with an ACE bandage and for him to follow up with his yard medical provider to order an x-ray of his left hand.  I also prescribed Calloway 325 mg of Tylenol, four times a day to be taken as needed for hand pain.  Calloway was then released back to the housing unit.

Calloway followed up with his yard medical provider on May 9, 2008.  Some swelling was noted and Calloway claimed he was unable to move two fingers.  An x-ray of his left hand was ordered.

On May 13, 2008, an x-ray of Calloway's left hand was taken, disclosing a fracture of the 5th metacarpal shaft.  Following his x-ray, Calloway was seen and examined the same day by a physician at ACH regarding the x-ray finding.  The physician's notes from that examination note slight soft tissue swelling and complete range of motion with tenderness.  A possible rotational deformity was noted in the 5th metacarpal so the physician prepared a Request for Services for Calloway to be seen by an orthopedic specialist.  A splint was also applied to Calloway's left hand and he was educated about the care of the splint and follow-up procedures.  Calloway denied pain medication as he already had a prescription.

On May 19, 2008, I saw Calloway in my clinic regarding his pain complaints related to his left hand pain.  I reviewed the x-ray and advised Calloway to continue to use his splint until he saw the orthopedic specialist.  I prepared another Request for Services for

7

      Calloway to be seen by an orthopedic specialist. I also prescribed a stronger pain medication for Calloway, Tramadol, for his pain complaints.

      On May 27, 2008, seven day follow-up on Ortho Request for Services. Examined, pain medication renewed.

      On June 6, 2008, Calloway was examined by orthopedic specialist Dr. Alade. It was noted that Calloway arrived at his appointment not wearing his splint. The examination noted that there is very minimal deformity of the hand, dorsal and no rotational deformity. Calloway had full extension and intact neuro-vascular exam.[3]

      On July 9, 2008, Calloway was examined by orthopedic specialist Dr. Smith. Dr. Smith noted that Calloway had only minimal discomfort in his left hand and there was no tenderness to palpation over the fracture site, with full range of motion of all the fingers. The fracture had healed.

      Upon receiving Dr. Smith's report that the fracture had healed, I noted the information in Calloway's file and on July 22, 2008 continued Calloway's prescriptions for Tramadol and Tylenol to address his pain complaints.

      I had several encounters with inmate Calloway, including an incident in November 2009 in which I admitted Calloway to the hospital following a refusal of hemodialysis. I did not treat him further for any complaints of pain related to his left hand nor did Calloway request further treatment. Dr. Smith, the orthopedic specialist, did not prepare a treatment plan for any further treatment as the fracture had healed and Calloway had full range of motion of the fingers. No medical professional has recommended surgical intervention for the fracture to Calloway's left hand.

(Wang Decl., ¶¶ 5-17.)

      The exhibits attached to the declaration establish that the x-ray ordered by Dr. Wang indicated a fracture of the 5th metacarpal. (Exh. A, p. 12.) Page 17 of Exhibit A establishes that Dr. Wang prescribed pain medication. Plaintiff was seen by the orthopedic specialist on June 6, 2008. The impression was a fracture of the left hand, fifth metacarpal shaft. The treatment plan indicated "no further treatment of immobilization is indicated [sic]. No contact sports activities.

---

[3] Pages 23 and 24 of Exhibit A is a copy of the orthopedic consultation, indicating that Plaintiff was seen by Clement O. Alade, M.D. at the Pacific Orthopedic Medical Group in Bakersfield.

Return in 4-6 weeks with x-rays, if still symptomatic." ((Id., p. 24.)   Plaintiff was seen for follow-up at the CSP Corcoran Hospital by David G. Smith, M.D., Diplomate, American Board of Orthopedic Surgery, on July 9, 2008.  Dr. Smith's impression follows:

> Mr. Calloway is about two months status post fracture of the fifth metacarpal shaft.  He clinically is doing very well.  He has only minimal discomfort in his left hand.  There is no tenderness to palpation over the fracture site.  He has full range of motion of all the fingers of the left hand.  Clinically the fracture has healed and I do not feel he needs any further follow-up at this point in time.  I will send him back on an as needed basis.

(Id., p. 29.)

Dr. Wang's' evidence establishes that Plaintiff was seen by Dr. Wang on the date that he had the altercation with correctional staff.  Dr. Wang arranged to transfer Plaintiff to the ACH, but Plaintiff refused.  Dr. Wang examined Plaintiff's hand, and prepared physician's orders for Plaintiff to be seen by his yard medical provider and to order an x-ray of his left hand.  Two days later, Plaintiff was seen and an x-ray was ordered.  The x-ray, taken on May 13, 2008, six days after the incident, revealed a fracture of the fifth metacarpal shaft.  A splint was applied to his hand, and pain medication was offered, but refused by Plaintiff due to an existing prescription.  Defendants' evidence establishes that Plaintiff was seen again by Dr. Wang on May 19th.  Dr. Wang referred Plaintiff to an orthopedic specialist, who saw Plaintiff on June 6, 2008.  Dr. Wang's evidence establishes that Plaintiff was seen at CSP Corcoran hospital for follow-up on July 9, 2008.  Defendants' evidence clearly establishes that no further treatment was warranted, and that the fracture had healed.

The Court finds that Defendant Dr. Wang has met his burden on summary judgment.  The evidence submitted by Dr. Wang establishes that he was not deliberately indifferent to Plaintiff's medical need.  Dr. Wang saw Plaintiff on the day he was injured, and referred him to the yard medical clinic for an x-ray, and further referred him to an orthopedic specialist.  The orthopedic specialist indicated that no further treatment was warranted.  The follow-up appointment on July 9, 2008, with an orthopedic specialist, indicated that Plaintiff's fracture had clinically healed.

9

The burden shifts to Plaintiff to come forward with evidence that establishes the existence of a triable issue of material fact - evidence that Dr. Wang knew of and disregarded a serious risk to Plaintiff's health, resulting in injury to Plaintiff.

In opposition, Plaintiff filed a document titled as a Supplemental Memorandum of Points and Authorities in Support of Opposition Denying Summary Judgment. This document consists of a page and a half of argument. Attached as an exhibit to the memorandum is information regarding dialysis treatment in general.[4] Plaintiff fails to offer any evidence of Dr. Wang's conduct regarding the treatment of Plaintiff's hand, or any other conduct by Dr. Wang.

Plaintiff also submits a declaration, not made under the penalty of perjury. Although Plaintiff restates allegations of the complaint, he fails to offer any evidence that Dr. Wang was deliberately indifferent to his injured hand. The third amended complaint consists of a narrative attachment to a form complaint. The form complaint is made under the penalty of perjury but the narrative attachment is not. Regardless, the allegations of the complaint, taken as a declaration in support of an opposition to summary judgment, establish at most a delay in treatment. There is no evidence, however, that such delay caused Plaintiff any injury. There is no evidence that the pain was not immediately treated.

**V.    Conclusion**

The Court finds that the evidence submitted by Defendants establishes the lack of existence of a triable issue of fact - the evidence establishes that Dr. Wang responded appropriately to Plaintiff's injured hand by referring him to the yard medical clinic to order an x-ray, and referring him for an orthopedic consult. The evidence establishes that the orthopedic specialist determined that a splint was the appropriate treatment, and that the fracture had "clinically healed." There is no evidence that Dr. Wang was deliberately indifferent to Plaintiff's

---

[4] In the March 17, 2011, order finding that the third amended complaint stated a claim for relief, the Court noted that the third amended complaint stated a claim for relief against Dr. Wang for deliberate indifference for failing to follow up on the injury to Plaintiff's left hand. Plaintiff did not state a claim for relief for deliberate indifference to his medical care regarding any other medical condition. (ECF No. 24.)

Case 1:08-cv-01896-LJO-GSA   Document 78   Filed 02/15/13   Page 11 of 11

injured hand, or that any delay in ordering an x-ray caused Plaintiff any further injury. Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 407 (9th Cir. 1985) (mere delay in medical treatment does not constitute deliberate indifference).

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be granted on Plaintiff's claim of deliberate indifference to his serious medical need.
2. Judgment entered in favor of Dr. Wang and against Plaintiff.
3. This action proceed against Defendants Oaks and Hayward on Plaintiff's claim of excessive force.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time waives all objections to the judge's findings of fact. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998). Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **February 14, 2013**              /s/ **Gary S. Austin**
                                            UNITED STATES MAGISTRATE JUDGE

11