UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMISI JERMAINE CALLOWAY, | Case No. 1:08 cv 01896 LJO GSA PC |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| C/O OAKS, et al., | |
| Defendants | (ECF NO. 38) |
| | OBJECTIONS DUE IN TWENTY DAYS |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).  Pending before the Court is a motion for summary Judgment by Defendants Oaks and Hayward.  Plaintiff has opposed the motion. [1]

## I.      Procedural History

This action proceeds on the October 5, 2009, third amended complaint.  In an order entered on March 17, 2011, the Court found that the third amended complaint stated a claim for relief against Defendant Correctional Officers Oaks and Hayward for excessive force in violation of the Eighth Amendment.  Plaintiff also stated a claim against Defendant Dr. Wang for

---

[1] On April 7, 2011, the Court issued and sent to Plaintiff the summary judgment notice required by Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (ECF No. 26.) On July 10, 2012, Plaintiff was re-served with the Rand notice in response to the Ninth Circuit's decision in Woods v. Carey, 684 F.3d 934 (9th Cir. 2012).

1

deliberate indifference to Plaintiff's serious medical needs.[2]

Plaintiff is currently incarcerated at CSP Corcoran.  The event at issue in this lawsuit occurred while Plaintiff was housed at Corcoran.   Plaintiff alleges that on May 2, 2008, after  he reported that he was suffering from severe chest pain, he was escorted by wheelchair to the emergency room for emergency medical care.  As Plaintiff stood up to be weighed by a nurse, C/O Oaks held the chair and C/O Hayward grabbed Plaintiff's right bicep and began deliberately hurting him.  Plaintiff recently had a hemodialysis access tube placed in his bicep during a surgery at Mercy Hospital.  Both Hayward and Oaks were aware of this.  Plaintiff told Hayward to stop hurting him and pulled off Hayward's tight grip which was cutting off Plaintiff's circulation.  Hayward jumped away in self-defense and began striking Plaintiff in the head and face.  Oaks struck Plaintiff on his back and head.  The emergency alarm was activated and Hayward started screaming to the arriving officers that it was a staff assault.  Plaintiff alleges that he never tried to assault staff, and that he was being "assaulted himself."  Plaintiff went in and out of consciousness and could not defend himself.  Sometime during the assault, Plaintiff's handcuffs were taken off one hand, and his other hand was stomped.  Both arms were twisted behind his back and both shoulders were dislocated.  Plaintiff was "thrown" onto a gurney and his hands were chained to the gurney.

///

///

---

[2] In an order entered on April 22, 2013, the District Court entered judgment and an order adopting the findings and recommendations of the Magistrate Judge, granting Defendant Wang's motion for summary judgment.  The only remaining claim in this action is Plaintiff's claim of excessive force against Defendants Oaks and Hayward.

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.     Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine

issue as to any material fact, and that the moving party is entitled to judgment as a matter of

law.  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> [always bears the initial responsibility of informing the district
> court of the basis for its motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file, together with the
> affidavits, if any," which it believes demonstrate the absence of a genuine issue
> of material fact.
> Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial responsibility, the burden then shifts to the opposing

party to establish that a genuine issue as to any material fact actually does exist.  Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish

the existence of this factual dispute, the opposing party may not rely upon the denial of its

pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or

admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e);

Matsushita, 475 U.S. at 586 n. 11.  The opposing party must demonstrate that the fact in

contention is material, i.e., a fact that might affect the outcome of the suit under governing law,

Anderson, 477 U.S. at 248; Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir.

1996), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, Matsushita, 475 U.S. at 588; County of Tuolumne v.

Sonora Community Hosp., 263 F.3d 1148, 1154 (9th Cir. 2001).

In the endeavor to establish the existence of a factual dispute, the opposing party need

not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed

factual dispute be shown to require a jury or judge to resolve the parties' differing versions of

the truth at trial." Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865, 872 (9th Cir. 2007).

Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in

order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting

Fed. R. Civ. P. 56(e) advisory committee's notes on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.

Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and

all reasonable inferences that may be drawn from the facts placed before the court must be drawn

in favor of the opposing party. Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc.,

369 U.S. 654, 655 (1962)(per curiam)). Nevertheless, inferences are not drawn out of the air,

and it is the opposing party's obligation to produce a factual predicate from which the inference

may be drawn. Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244-45 (E.D. Cal.

1985)(aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

show that there is some metaphysical doubt as to material facts. Where the record taken as a

whole could not lead a rational trier of fact to find for the nonmoving party, there is not 'genuine

issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

A.    **Excessive Force**

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual

Punishments Clause depends upon the claim at issue  . . ." Hudson v. McMillian, 503 U.S. 1, 8

(1992). "The objective component of an Eighth Amendment claim is . . . contextual and

responsive to contemporary standards of decency.: Id. (internal quotation marks and citations

omitted). The malicious and sadistic use of force to cause harm always violates contemporary

standards of decency, regardless of whether or not significant injury is evident.  Id., at 9; see also

Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002)(Eighth Amendment excessive force standard

examines de minimis uses of force, not de minimis injuries)).  However, "not every malevolent

touch by a prison guard gives rise to a federal cause of action."  Id. at 9.  "The Eighth

Amendment's prohibition of cruel and unusual punishments necessarily excludes from

constitutional recognition de minimis uses of physical force, provided that the use of force is not

of a sort 'repugnant to the conscience of mankind."  Id. at 9-10 (internal quotation marks and

citation omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation

of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was

applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

cause harm."  Id. at 7.  "In determining whether the use of force was wanton and unnecessary, it

may also be proper to evaluate the need for application of force, the relationship between that

need and the amount of force used, the threat reasonably perceived by responsible officials, and

any efforts made to temper the  severity of a forceful response."  Id.  (internal quotation marks

and citations omitted).  "The absence of serious injury is . . . relevant to the Eighth Amendment

inquiry, but does not end it."  Id.

### 1.      Heck v. Humphrey

Defendants argue that Plaintiff's excessive force claim is barred by his prior disciplinary

conviction of battery on a peace officer arising out of the same incident under the doctrine of

Heck v. Humphrey, 412 U.S. 477 (1994).  Defendants' Exhibit A to the declaration of

Lieutenant Calloway is a copy of a CDC Form 115, Rules Violation Report, indicating that

Plaintiff was found guilty of battery on a peace officer, based on the conduct at issue in this

lawsuit.  In <u>Heck</u>, the U.S. Supreme Court held that a convicted criminal may not bring a civil

suit questioning the validity of his conviction until he has gotten the conviction set aside.  <u>See</u>

512 U.S. at 486-87.   Defendants argue that with exceptions not relevant here, <u>Heck</u> and its

progeny prevent a state prisoner from pursuing a § 1983 action that, if successful, would

necessarily imply the invalidity of a disciplinary conviction resulting in the loss of good time or

credit.  <u>See</u> <u>Edwards v. Balisok</u>, 520 U.S. 641, 648-49 (1997).  Any challenge to such a

conviction must, instead, be brought by a petition for writ of habeas corpus.

Defendants argue that if the factual basis of a plaintiff's civil case is inconsistent with his

conviction, <u>Heck</u> "kicks in and bars his civil suit." <u>Okoro v. Callaghan</u>, 324 F.3d 488, 490 (7th

Cir. 2003); <u>Robinson v. Doe</u>, 272 F.3d 921, 923 (7th Cir. 2001)(indicating that a plaintiff "can't

base a civil case on evidence that if true shows he was wrongly convicted; that is an

impermissible end run around conviction.")  Defendants argue that "Heck, in other words, says

that if a criminal conviction arising out of the same facts stands and is fundamentally

inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983

action must be dismissed." <u>Smithart v.Towery</u>, 79 F.3d 951, 952 (9th Cir. 1996).

Defendants note that, although it is possible for an excessive force action and a battery

conviction to coexist without running afoul of <u>Heck</u>, the theory of this case does not fall within

that exception.  Plaintiff in this case claims that Defendants attacked him without provocation, as

opposed to a plaintiff admitting that he hit a law enforcement officer, and the officer responded

with excessive force.  <u>Smithart</u>, 79 F.3d at 952-53.

In a case squarely addressing the question of whether success on the merits of an

excessive force claim necessarily implies the invalidity of a rule violation conviction, the Ninth

Circuit held that the rule established in <u>Heck</u> is not an evidentiary doctrine, and, therefore, cannot

6

bar evidence in a § 1983 action.  <u>See</u> <u>Simpson v. Thomas</u>, 528 F.3d 685, 696 (9th Cir. 2008).   In

<u>Simpson</u>, a case where the prisoner plaintiff testified that he was subjected to an unprovoked use

of force, the court held that:

> We turn next to yet another issue of first impression in this circuit:
> whether *Heck v. Humphrey* maybe used to bar evidence in a §
> 1983 claim for excessive force.  We conclude that *Heck* does not
> create a rule of evidence exclusion.  Therefore, if, as in this case, a
> party is permitted to proceed on a § 1983 claim, relevant evidence
> may not be barred under the rule announced in *Heck*.

<u>Simpson</u>, 528 F.3d at 691.  In reaching that conclusion, the court examined the relationship

between 42 U.S.C. § 1983 and 28 U.S.C. § 2254, and the United States Supreme Court cases

addressing the use of § 1983 to challenge prison administrative decisions.  After reviewing those

cases, the court concluded that:

> None of these Supreme Court cases specifically address or even
> imply that *Heck* may serve as an evidentiary bar.  Rather, we
> believe that this entire line of cases and repeated discussions of the
> interplay between §1983 and § 2254 demonstrate that the Supreme
> Court's intent in announcing the rule in *Heck* was to prevent
> prisoners from subverting the requirements of § 2254 by filing suit
> under § 1983.  Consequently, all of these cases discuss whether a
> claim itself is viable, not whether evidence is admissible.
>
> Since *Heck*  was decided, we too have frequently considered its
> implications on § 1983 cases. *See, e.g., Smith v. City of Hemet,*
> 394 F.3d 689 (9th Cir. 2005)(en banc); *Ramirez*, 334 F.3d 850;
> *Cunningham v. Gates*, 312 F.3d 1148 (9th Cir. 2003)(as amended);
> *Sanford v. Motts*, 258 F.3d 1117 (9th Cir. 2001); *Butterfield v. Bail*,
> 120 F.3d 1023 (9th Cir. 1997); *Smithart v. Towery*, 79 F.3d 951 (9th
> Cir. 1996).  However, like the Supreme Court, we have never held
> or even implied that *Heck* could be used to bar evidence – rather,
> applying Supreme Court precedent, we have repeatedly considered
> whether *Heck* bars a claim under § 1983.

<u>Id</u>., at 695.   Here, Plaintiff is filing a civil rights action alleging an unprovoked use of force on

Plaintiff.   Defendants cannot, therefore, preclude evidence that they initiated physical contact

with Plaintiff on the ground that Plaintiff was convicted of battery on a peace officer.  <u>Simpson</u>, 528 F.3d at 696.

## 2. <u>Qualified Immunity</u>

Defendants also argue that they are entitled to qualified immunity from liability for damages so long as their conduct did not violate clearly established constitutional or statutory rights of which a reasonable person would have known.  <u>Anderson v. Creighton</u>, 483 U.S. 635, 638 (1987).  "Qualified immunity is 'an entitlement not to stand trial of face the other burdens of litigation,'" <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001) (quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985), overruled on other grounds by <u>Pearson v. Callahan</u>, 555 U.S. 223, 233 (2009)).  In applying the two-part qualified immunity analysis, it must be determined whether, "taken in the light most favorable to [Plaintiff], Defendants' conduct amounted to a constitutional violation, and . . . whether or not the right was clearly established at the time of the violation."  <u>McSherry v. City of Long Beach</u>, 560 F.3d 1125, 1129-30 (9th Cir. 2009).  These prongs need not be addressed by the Court in any particular order.  <u>Pearson</u>, 555 U.S. at 233.  "The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful "in the situation he confronted."  <u>Norwood v. Vance</u>, 591 F.3d 1062, 1068 (9th Cir. 2010).

In determining whether summary judgment is appropriate, we must view the evidence in the light most favorable to the non-moving party.  <u>Huppert v. City of Pittsburg</u>, 574 F.3d 696, 701 (9th Cir. 2009).  In the third amended complaint on which this action proceeds, Plaintiff alleges that "C/O Hayward intentionally grab plaintiff right bicep in which I just had recently

had a venous access placed in my arm from surgery at Mercy Hospital." (Am. Compl. 19:2-4).[3]

Plaintiff further alleges that:

> When I pulled my arm away telling C/O Hayward to stop hurting
> me then jump away out of fear from his own conscious and not
> because I attack him but because he thought I would and that what
> lead C/O Hayward to start striking plaintiff about the head and face
> area, in which started a chain reaction because C/O Oaks started to
> strike Plaintiff about his back and head.  Also, while the E.R. alarm
> was activated C/O Hayward started screaming to the other arriving
> Defendants Spears, Sgt. Moore, and Sgt. Canales that it's a staff
> assault in which I never tried to assault any staff at all and while I
> was being assaulted RN Ceballos did nothing to stop the attack on
> Plaintiff life and I stroke out in and out of consciousness and
> couldn't defend myself.

Id.,19:17-28.)    In his declaration submitted in opposition to the motion for summary judgment,

Plaintiff declares that:

> C/O Hayward physically grab my hemodialysis access in my right
> arm and squeezed it deliberately causing me pain and unwanted
> physical harm.  So I pulled away in reflex, verbally telling him that
> he was hurting my arm and can he not touch me, but C/O Hayward
> became defensive by then responding with throwing blows to my
> head assaulting me.  I tried to put my hands up to protect my head,
> but by this time I was being attacked and assaulted by several
> C/O's and Sgt.'s whom responded to the incident whom punch and
> kick my helpless defensive [sic] body even after I was beat to the
> ground not resisting at all.

(Pltf.'s Decl. 3:10-21.)

---

[3] The third amended complaint is signed under the penalty of perjury.  A verified complaint in a pro se civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief.  McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987)(per curiam); Lew v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir. 1985); Fed. R. Civ. P. 56(c)(4).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Court finds that, viewing the evidence in the light most favorable to Plaintiff, no reasonable officer would have knowingly grabbed Plaintiff's arm where  a venous access was placed, then strike Plaintiff in the head with blows, despite the fact that Plaintiff did not offer any resistance.  An inference could be drawn that when Plaintiff pulled his arm away and told Hayward to stop hurting him, Hayward interpreted this as an act of physical resistance.  As noted, however, the Court must view the evidence in the light most favorable to Plaintiff. Huppert, 574 F.3d at 701.   Plaintiff is entitled to have this factual dispute resolved by a jury. Defendants are therefore not entitled to qualified immunity.

Accordingly, IT IS HEREBY RECOMMENDED that Defendants' motion for summary judgment  be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   Any reply to the objections shall be served and filed within ten days after service of the objections.   The parties are advised that failure to file objections within the specified time waives all objections to the judge's findings of fact.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

10

1

2                                    Dated:   **August 28, 2013**       **/s/**

**Gary S. Austin**

3                                    UNITED STATES MAGISTRATE JUDGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28